At all defendants' appellants. Arguing on behalf of the defendants' appellants, attorney is Jennifer Kimball. Arguing on behalf of the plaintiffs' attorney, attorney is Michael Reese. Ms. Kimball may approach. You may proceed. Thank you. Good morning. My name is Jennifer Kimball. I am here on behalf of the defendant and appellants, the Rego Group, Mr. Eustachio Zagopoulos and a friend of mine, Mr. Eustachio Zagopoulos. We are here today because we believe that material questions of fact remain and therefore that summary judgment was improperly entered in this case. We're also here today because of requests to admit, but the requests to admit are neither the beginning nor the end of the issue here today. What did you say? The requests to admit are what? The issue is not resolved, we believe, by the request to admit. It's either the beginning or the end of this matter today. There are several main points that we would like to make. First, we believe that the existence of a valid lien on the silver at the time of the distribution was a genuine issue of material fact that precluded the entry of summary judgment in this case. The record contains evidence that the silver bars were transferred subject to HSBC's prior valid lien at the time of the transfer in January 2009. Wasn't this akin to an affirmative defense? Well, Your Honor, that's a good question. We have said throughout that the silver was encumbered with a valid lien at the time of the transfer. In fact, when the plaintiff filed their complaint, they attached an exhibit to the complaint being an affidavit of Mr. Rodolfo's. In that affidavit attached to the complaint, it said the silver is encumbered by a valid lien. I've got two questions. When's the first time you actually argued that that's a judicial admission? I'm sorry? You argued in, I know, the yellow brief that it's a judicial admission that they attached this affidavit to the complaint, therefore it's an admission on the part of the plaintiff's, the information contained within that affidavit. Correct. Is that the first time you argued judicial admission? We argued that affidavit that was attached to the complaint, we argued based on it in the opening brief as well on appeal. No, we did not cite to that affidavit in the briefing below. But we did cite to that affidavit in the opening brief and plaintiffs don't dispute that, plaintiffs don't dispute the statements in that original affidavit that was attached to the complaint. Do you agree that it's your burden to show at the summary judgment stage filed by the plaintiffs the existence and the amount of the lien? I believe that it's our burden to provide some evidence of the lien, Your Honor. I don't believe that it's our burden to prove the amount of the lien at this stage of the proceedings. This was not our motion for summary judgment. We did not bring a motion for summary judgment based on the fact that of the existence of a valid lien. It was their motion. We advise that we provided evidence of the lien. If you look at... How do you know the lien encumbers the full amount, then, if you don't have some amount in there? Well... Maybe it only encumbers half of it. And I think that's the genuine issue of material fact that remains. It hasn't yet been adjudicated as to what the extent of the lien was. And I know plaintiff had come up with a creative argument as to that it was $250. That's... We don't agree with that on any level. But if you look at some of the authorities that we cited, the Nova Chemicals, Inc. v. Faralli case, which is 2003 U.S. District Lexus, 18421, in that case there were open questions as to what the amount of the lien was. There had been an initial lien asserted and then there had been transfers back and forth between various parties. And one of the material questions, in fact, that the judge found in that case was that the amount of the lien was unclear. Similarly, in the case of Symantec Mobile Work, GMBH v. Symantec, 643F 2nd 675, it's a Pennsylvania case, but the fraudulent transfer act statute is almost identical to Illinois'. And in that case as well, the court found that there was some evidence of liens and some evidence that the liens weren't valid. And again, it concluded that there were questions as to validity, priority, and scope of the alleged liens. Were we looking to dispel questions of that as to the existence of the valid liens, it would have been our motion, it would have been our burden, and we would have had a higher standard of evidence to provide at that point. We're not seeking a judgment that the silver is protected by the valid liens. We're simply saying that there's some evidence here that it's protected by valid liens. You know, in the beginning you said something and I still didn't quite understand what you said. You said something about the request to admit aren't the beginning or the end of the matter. Is that what you said? Yes, that's what I said. What I meant by it is this. There are some complicated legal issues related to the Uniform Fraudulent Transfer Act involved in this case and in this appeal. And there have been times where the case has been portrayed as, well, there's an issue with the request to admit, there's no answer to the request to admit, therefore you lose. I don't believe that that's true. Wouldn't your case be a lot easier if you had answered the request to admit? It would, yes. So what's the reasoning behind not answering the request to admit other than you're saying that you weren't served properly, but even after you weren't served properly, you found the request to admit, but then never answered or attempted to answer them for three months thereafter? We became aware of the request to admit on the afternoon, I believe it was either the day of the hearing, the initial hearing or presentment on summary judgment or possibly the night before, I don't recall. So you became aware of them on the day of the hearing of three months before? I'm sorry, on the original presentment hearing on summary judgment. Okay. So prior to the briefing. And there is no report of proceedings for that date of the hearing. We had tried to obtain one. We were unable to do so. Therefore, the facts as to why we didn't file a motion sooner are not included in the record in this case. Which is your burden to include those in the record. Correct? It's our burden to include those in the record to the extent that we're relying on them, absolutely. And we were unable to do so because apparently the tape was turned off at the time that our case was called on December 2nd or 3rd. So what was said in open court is not a record. There are some references made to it in subsequent hearings. There is not a bystanders report? We did not, Your Honor. And my understanding of a bystanders report is that anything that we would file, we would need the approval of, we would need a consensus of counsel and a court order to do so. And the statements that were made that are part of the record of proceedings, the judge told me that he didn't believe that he had said the things that I recall him saying and that he was going to check the tape and see if it was correct or incorrect. And when we went to get a copy of the report of proceedings from that date, there was no tape. So we didn't seek to do a bystanders report at that point, Your Honor, because it was clear that the judge had a difference of recollection as to what took place on that date and that we would not be able to prove it. Well, nevertheless, there's three months from that date until the date that, or over three months, until a date that a motion to extend the time for answering the request to admit was filed, correct? That's true. And as I'm told, as we advised the trial court in a transcript that is part of the part of the report of proceedings, we were under the impression that as of the early December hearing date that the judge had instructed, we had been strongly discouraged from a collateral tag on the motion for summary judgment based on the request to admit. So it's more or less I felt that I was told to hold off on addressing the request to admit and deal with the summary judgment directly. And really, that's not a problem for us, because if you're looking at the request to admit, the admissions that flow from the request to admit, if you assume that they are deemed admitted, if you assume that we're not going to have a chance to respond to them, at least for purposes of this motion, we had ample grounds to defend the motion. The request to admit don't lead to a right to judgment whether they've, even if they are allowed to stand going forward, though we don't think they should be. Based on what? On the lien? On the silver? Based in part on the lien and the silver, yes. And in addition to the, the one issue is the lien on the silver, which is not addressed by the request to admit in any way, shape or form. So that's, to me, that's a preliminary issue. But in addition to that, the, they've got several other problems with the request to admit. The, or with the admissions that allegedly flow from them. First off, we contend that they waived their right to rely on the request to admit for purposes of this motion by including two other affidavits and relying on those affidavits. We also believe that they waived the right to rely on the request to admit by spending significant time talking about the badges of fraud and then turning around and saying, oh, but we think you've also admitted actual intent. So that's a problem. There's a waiver issue here. Even if there's not a waiver issue here, we don't believe that the admissions themselves, the content of them, lead to a right to judgment as a result of the, the admissions include evidence of, I believe, five badges of fraud. One of which we agree with, one of which we don't believe is squarely answered by the admission, or excuse me, three of which are not squarely answered by the admissions. And one that we have a difference of opinion as to what the badge of fraud actually means. So if you're looking at the admissions and trying to determine whether or not the admissions give rise to support the badges of fraud, they don't. In particular, we don't, we, no one disputes this to the badges of fraud. No one disputes that the transfers were to, were to insiders. I think technically there's some confusion there, but I don't, practically speaking, the transfers were to insiders. It went from All family. All family, yes. The second badge of fraud that they believe they've established is that the debtor retained possession or control. We don't believe that's established by the, by the request to admit. The request to admit included, admit that Rego was a, that Mr. Stacy Ostergopoulos was a principal at Rego Group. He was. Admit that he was the manager of Rego Family LLC. He was that as well. That doesn't mean that if you assume that Mr. Ostergopoulos is the debtor, that doesn't mean that, that he retained possession or control. In our response to consummary judgment, we provided his affidavit. We also provided a copy of the operating agreement of Rego Family LLC. Rego Family LLC's operating agreement limits the powers of Mr. Stacy Ostergopoulos. He's not an owner of Rego Family LLC. So you're saying it's a fact question? I'm saying it's a fact question. Based upon things that you tendered after the fact, correct? Right. And it's not, first of all, it's not resolved by the request, request to admit. Second of all, it's a fact questions remain because of the additional evidence we provided. But if in fact it is resolved by the request to admit, you can't rebut that, correct? There was no request to admit that asked, admit that the debtor retained possession or control. The two things that you just mentioned though, you have requests 12 and 13. You also have requests 21 and 22 that the defendant, the defendant personally owned the assets of both Rego Group and the Rego Family, correct?  The problem that with requests number 21 and 22 that Mr. Ostergopoulos personally owns the assets of the Rego Group Limited and the Rego Family LLC is that it, those admissions are contradicted by the complaint, not our complaint, their complaint. They're contradicted by the allegations of summary judgment and they're contrary to fact. I mean, unless we're to understand that a company owns them but also an individual owns them, I mean, either one owns them or the other does. And the plaintiff's taking the position that the Rego Group owns them and that the Rego Group transferred them to others and that others transferred at least a portion of the assets to the Rego Family. But if you don't answer the request to admit, they're deemed admitted, aren't they? No matter what they say, they're deemed admitted. That's true unless the right to rely on them is waived and they're not the only judicial admissions that can exist in a case. I mean, the plaintiff's own pleading and the plaintiff's own pleading also constitutes a judicial admission on their part as to this is their complaint. This is their request to admit. But again, is it, I asked this early on, is it the first time that you argued judicial admission in the complaint in the yellow brief? We relied on that affidavit in the opening brief. We did not argue that it was a judicial, I don't know that we argued that it was a judicial admission or explain that point in any detail until the reply. Well, I understand that you relied on it, but the issue is if these things are admitted, if the request to admit results in admissions by your client, then that ends the story if the admissions resolve the issue. Right. So we don't look at the complaint. We don't look at anything because the request to admit, the answers were admitted. It's as if your client said, yes, I agree with these. So then we don't look at the complaint. Now, we might look at the complaint with the affidavit attached if, in fact, it's a judicial admission and can be seen as that. But if you don't argue that until the yellow brief, how's the other side going to come back and argue it? I mean, you have to argue that in the white brief. Or you probably have to argue it at trial. I mean, in the trial court. But let's assume at least up here you have to argue it in the white brief, that you're relying on the complaint, not just for the facts alleged in the complaint, but that that's, in fact, a judicial admission made by the plaintiff. Certainly we didn't elaborate on that point until the final brief. That's right. We did, however, argue that the plaintiff's right to rely on the plaintiff waived his right to rely on the request to admit. And this is not something that has necessarily been fully addressed here. If you look at the case law that we cited on waiver of reliance on request to admit, the Roe v. State Bank of Lombard case 247.113.686 stands for the proposition that when a party introduces other evidence on the point that they seek to establish with the request to admit, when they introduce that other evidence, even if that other evidence is consistent with the request to admit, they have then, by doing so, they've waived their right to rely on the request to admit. Well, as it relates to the badges of fraud, not the actual intent, but the badges of fraud, the first time you raised that argument was in the motion to reconsider the law, correct? The argument that you just made now, that they relied on other evidence, therefore you could put in other evidence separate apart from the request to admit. They relied on other evidence other than the request to admit. As to the badges of fraud, not the actual intent, I understand that's a completely different issue. But it's the badges of fraud. The first time you raised that issue, that you could then put in other evidence on the badges of fraud, was in the motion to reconsider, correct? That's true, but we don't... If you look at the admissions that were cited in their motion for summary judgment, they cite specific admissions that they seem to be relying on in connection with the badges of fraud. I'm not even sure that they cite the 21, 20 and 21 are the ones that you referenced earlier. I'm not sure that they even cite them in their motion for summary judgment either. The admissions that they relied on in their motion for summary judgment, whether or not they waived them, don't establish fraud in fact as a matter of law. They relied on, as I said, when they talked about the debtor-retained possession of control, they did not rely on that admission of, oh, well, Mr. Rogopoulos was the de facto owner of these assets, or the 20 and 21 that you referenced. They didn't rely on that admission either, so we weren't looking to respond to that particular admission. We were looking to respond to the admissions that they relied on, and that was that Mr. Rogopoulos was the principal of the Rego Group, and Mr. Rogopoulos was the manager of Rego Family. That was the admissions that they offered in support of that factor. As to whether the transfer was disclosed or concealed, they cited to admissions, admit that you failed to specifically obtain the bank's approval to transfer the silver. We agree we didn't obtain the bank's approval nor were we required to do so. Admit that you failed to inform any creditor of the transfer of silver bars on January 15, 2009, after it occurred. That's true. We didn't inform any creditor of the transfer on January 15, 2009, after it occurred. So we don't dispute either one of those admissions. If they want to rely on the admissions that are specifically cited in their motion for summary judgment, it doesn't warrant relief as a matter of law. So we weren't arguing waiver in that case because it wasn't necessary. If you look at the third factor, factor 10, transfer being close in time to the debt, admit that the transfer was a little bit more than six months after the loan. Again, we agree with that. It was a little bit more than six months after the loan. But I don't know that that proves as a matter of law that this badge of fraud is established or that they've proven fraud, in fact, is a matter of law either. And then finally, badge of fraud as to whether debtor removed or concealed assets. We believe that there's a real misunderstanding as to what this badge even means because if the debtor removed or concealed assets, it means that the debtor had to do something to remove or conceal the assets. And the position that the plaintiff took was because the assets were transferred, they were removed. Well, if that's the case, if removal is the same as transfer, then this badge of fraud doesn't mean anything. Removal or concealment has to mean something other than just a transfer in order for it to be probative of anything. So at the same time, we provided evidence that negated other factors. I mean, if we're looking to determine actual intent and we're looking at the badges of fraud, then our evidence on the other factors should be relevant, and it doesn't contradict the number of any of the requests to admit that were cited. For example. Yeah, I think I'm going to give you an opportunity in your rebuttal case. So hold your thought right there because you've gone beyond your time. I didn't hear it. Yes. Mr. Reese. I'm sorry. Good morning, and may it please the court, counsel. My name is Mike Reese, and I'm here today on behalf of Plaintiff Appellee Golden Eagle. The trial court committed no error in granting summary judgment and denying the defendant's motion to reconsider. The trial court should be affirmed. Let's go right to the issue concerning whether the silver was subject to a prior valid lien. Defendants relied on nothing more than an affidavit from Steve Rigo without attaching any loan documents or security agreement to the affidavit. Is it their burden to show the amount or not? I think, Your Honor, that first they have to show the existence. That's sort of assumed in the question. And then I do believe that they have to show the amount. This is something that should be within their knowledge. They should know how much the loan was for with HSBC. They should know if there was a security agreement. They should know the whole point of the request to admit was to lay out that they to discover where we had a dispute. OK. And the only thing they came up with was an affidavit that was vague as to such important things as the terms of the loan. They have to know how much the loan was for with HSBC, don't they? That's not attached to the affidavit. Don't they? If there is a security agreement in the silver, don't they have a copy of it? If it's their affidavit, they have the burden under Rule 191A to set forth the documents on which they're relying. Wasn't Mr. Rego relying on a loan document if he's saying that there was a substantial loan outstanding to HSBC? Isn't he relying on a security agreement if he says in his affidavit, as he did in paragraph 15, that the silver was pledged as collateral? Their argument is that the affidavit showed the existence of a loan, created a question of fact on the existence of a loan. And the amount of that loan, how much the silver was encumbered, is actually a question of fact. Well, if they say there's a loan, let's see the agreement. Do you think HSBC loaned $2 million? I don't even know how much it was. Do you think they made a loan for a substantial amount of money and there's no written agreement? I mean, this is a kind of not – I shouldn't say it. This was typical – let me go this way. The affidavit was typical of the representation in this case, okay? No documents were ever produced. They're nowhere in the record. I understand, you know, sometimes you have to deal with what you have to deal with as a practicing lawyer, but it seems to me you're going to have a rule such as 191. You have to comply with the rule. The rule clearly was not complied with because no documentation was submitted to show the existence of the loan, much less what the amount of that loan was. So you're saying there needed to be more there in order to have a question of fact. To have a question of fact, they would have needed to have the loan document to show that there was a loan and a security agreement to show that the silver was pledged as collateral. And by the way, what they did submit actually showed that the loan was secured by a mortgage on, I think, two pieces of property that were of approximate the same value. So I don't even know where they were going with that argument. The silver remained very much an asset for purposes of the Uniform Fraudulent Transfer Act. Second, we are entitled at all times to rely on the unanswered request to admit to show actual fraud. Now, how about your affidavit that you attached? Are you now waiving those admissions and the request to admit as a result of that? Absolutely not. Why not? Which affidavit are we referring to? Because there's the affidavit that was attached to our complaint, which was not ever made an issue in the trial court. That argument was never made. They're the appellants. They have the burden. They have to make the right argument at the right time in front of the trial judge. Never made. So it was waived. It was waived for the first time in the reply brief. So it was too little, too late as far as that affidavit is concerned. Now, the trial court properly concluded that the transfers of silver were fraudulent based on five of the factors set up in Section 5B of the Act. Subparts 1, 2, 3, 7, and 10. As to the first factor, the silver bars were transferred on January 15 to an insider. I don't think they really disagree with that from what I gather of their argument. As to the second, the debtor, Steve Rego, retained possession or control after transfer because he was the one who transferred the silver from the Rego group, of which he was the principal. And the silver was then transferred to the Rego family, of which he was the manager. And as Justice Burke pointed out, the request to admit 21 and 22 further showed his involvement and his control. But I think I misspoke. I don't see that in the motion for summary judgment or the memo that was attached to it, any reliance on 21 and 22. Well, that's true enough, but just to be – You relied on 12 and 13. We relied on 12 and 13. But those requests to admit were attached to the motion. And I think as they were attached to the motion, you could argue everything that was within the four corners of the motion. It would be like a deposition. You could argue anything in the deposition. It's not like I want to compare the situation with something that would be improper. Let's suppose that we had a piece of evidence. We didn't use it on the motion, attach it to the motion. But then for the first time in the reply, we were attaching it, you know, much like the plaintiff – I'm sorry, much like the defendant is trying to use an affidavit for the first time in the reply. Okay. That would be improper. But the motion had all 26 of the questions. Or if there was a separate argument, a different argument. Yes, yes. And didn't that happen below in that you relied on number 18 to show actual intent for the first time in your reply? That was in response. They made an argument in their response that there was a question of fact as to intent. So in our reply, replying to their response, we pointed out that there was no longer a question as to intent based on the admission in 17 and 18 that they hindered, delayed, or hid assets. But that's in response to the argument they made. It's not a brand-new argument. That's in response to what they were arguing along in their response. There was nothing improper in that because every one of those requests was attached to the original motion. Now, I do want to go to this question about whether we waived on the right to rely on these requests to admit. That was not part of their written response. Okay. To set the chronology, they have the request to admit at the same time that they have our motion, December 2nd. It's being briefed on December 7th. Okay? That's when they step up. Maybe it's December 3rd. I can't quite remember the date. Let's start the clock ticking at that point. Okay? I think that's fair. Does anyone in this courtroom think for a moment that if they came in within 28 days, on December 31st, within the time for filing a written response to the motion for summary judgment, if they came in and said, we just got these in the last 28 days, we're filing our responses, do you think there's a trial judge in this district that would not give them leave to file those responses? Of course not. Okay? They made a different decision. It's one that, quite frankly, I don't want to beat a dead horse on this. Okay? We laid it out in the brief. But they made a different decision. They went down a different path. And it's led to this argument today. But they had a decision to make, and they have to live with the consequences of it. They go to the hearing on January 23rd. There's nothing on file relative to the responses to the request to admit.  Although it's remarkable. They go to the hearing and they say, well, we have them. We have them. But we're not going to ask for leave to file them because we don't have to. We don't have to because, and they make a decision here. It's their decision. They say that they really don't disagree with them. That's quoted in our brief from the January 23rd hearing. And they say we don't need to respond to them. So what is a trial judge supposed to do? Okay? He's got 26 unanswered requests to admit. He's got our motion. He's got a response that doesn't even refer to the request to admit. What is the issue that has to be decided at this point? It's all been admitted. Now, as to the issue of actual intent of the hearing on January 23rd, we have the admissions. That's what we were relying on. Set forth in the reply in response to their argument and their response that there's a question of fact as to intent. That was based on you raising the badges of fraud, correct? Well, in our motion. In our motion, we raised the badges of fraud. We said that there were six badges of fraud. The judge gave it to us on five. He wound up. He wound up. Well, if you had actually intended to fraud, what do you need these badges for? If you have an admission that I am actually intending to defraud the creditor, why do I have to go through this intellectual exercise of 11 badges of fraud when I have an admission to actual intent? I guess you're asking how many bullets do you have to put into a corpse. I don't, you know, I think we want it to be as thorough as possible, but we were able to go with it, you know, and make as good a record for ourselves as we could. But you didn't argue the actual intent in the first motion. They came back and said, based upon the badges of fraud, you haven't shown intent. Then you come back with a brand-new argument that there's actual intent. Forget about the badges of fraud. Well, we didn't say forget about the badges of fraud. I know, but basically that's what we'd be doing. We respond to their argument. Look, if they make the argument there's a question of fact as to intent, shouldn't we respond to it? Would we be remiss as lawyers if we didn't respond to that argument by relying on what was already admitted and attached to the motion? It's nothing new. I don't mean to be the dead horse here. So let's talk about the badges of fraud. The transfer to insiders, you know, let's assume that that one is conceded to some degree. Yeah. And then, you know, you have some evidence of concealment because it wasn't disclosed, because that's the definition of concealment. And then you have an argument on number two, which is the retained control. I'm a little confused about this assets removed or concealed. I mean, you're not arguing that they were concealed. I mean, those bars were—you knew where they were all the time. No, we didn't. Well, they were— No, we didn't. We didn't know where they were. So you were arguing that they were concealed. Yes. We didn't know—the first time we knew that they were outside of the Rego group was the supplemental affidavit of April 15, 2013. We didn't know where they were before. We didn't know where they were for the previous five-plus years. And that was admitted too. And then the short times. What is a short time? It's, you know, the other badge of fraud, that the transfer was shortly after a substantial debt was— It was in six months because what happens is we know where the silver is in July of 2008. That's when we issued the loan. That's when we know it was with the Rego group. And then it's transferred January 15 of 2009. That's the six months. But we didn't know what happened to it after January of 2013. Is that a short time? We argue that it is, correct? Yeah, I mean, it seems pretty short as far as the fact that— Short as a matter of law? Well, you know, I don't know what the contrary inference would be. The silver was transferred. I mean, I know I'm switching back and forth in terms of the factors, but if they're already admitting that they were hiding, concealing, that they were hindering and they were delaying, is that really a stretch? Putting it all together when each and every one of their requests was unanswered? I don't think so. You know, there's case law surrounding these badges of fraud. The Sharif case, I think, found that the transfer was fraudulent based on the presence of four or five badges of fraud and so forth. There's a Brandon case, a Seventh Circuit case, to the effect that just one factor, if it's sufficiently serious, can be enough to support a finding of a fraudulent conveyance. Don't those cases, though, inherently say that that is a fact question? That whether or not you have enough, it's a sufficiency of the evidence question. Whether you have three or you have four or you have ten badges of fraud, evidence of those badges of fraud, doesn't that presuppose that it's a fact question? It presupposes that it starts out as a fact question, but that once you come forward with requests to admit unanswered that are binding admissions along with and then it becomes a burden. How many is enough? Is it three or is it six? Well, we had at least five. Right. I understand. But is five enough? Is six enough? I would say five is enough and then, you know, you've got the requests to admit as far as the others. I mean, again, how many bullets do you have to put in there? And these cases do get decided as a matter of law, as your question just acknowledged, and there's also the Kennedy case that I think we cited in our telebrief. So these cases get decided as a matter of law, or they can be, and here there simply wasn't anything presented on the other side to create a question of fact. I didn't hear much during the argument this morning on the motion to reconsider, so I guess that may be my cue to say if there are no further questions. Anything further, Justice Garland? No, thank you. We ask you to affirm. Thank you for your time this morning. Thank you, sir. Ms. Kimley. Thank you. In our research, we found one case where fraud in fact was found on summary judgment as a matter of law. It's the Kennedy v. Four Boys Labor Services case, 379-11-3, 361. In that case, it was determined as a matter of law that the judgment debtor transferred assets to relatives, that the judgment debtor did so after a lawsuit was filed against them, that the transfer was of substantially all assets, and that it rendered the debtor himself unable to pay. That is a completely different situation to find actual fraudulent intent as a matter of law than what we have here. What happened in the Four Boys case, the judgment debtor had property, got sued, took all the property, bumbled up, and got it out of there. That's not what happened in this case, not by a long shot, and they don't even argue that it did. The factors that they're establishing, assuming that they established a few of the factors, are not the same factors. The evidence that we provided that was undisputed and unrebutted showed that the Rego group, for example, had about $700,000 of cash in the bank when they made these transfers, and for that matter, that when they transferred the silver, that it was encumbered by a lien, which means that they're transferring out property that can't be sold and has no – it can't be sold as it's encumbered by a lien. They couldn't go to the bank and get the silver out of the bank and sell it or make jewelry with it or do anything with it at the time that they transferred it. It had no net value until the lien was paid off because the banks wouldn't release it. To what extent was the lien? To what dollar amount was the lien? Did we ever know that? It's not – Your Honor, it's not in the record. Counsel's – Is that not relevant? It is relevant, Your Honor, but it's not determinative. At the end of the day, the bank had a possessory lien on it, so even if the bank was oversecured, if the silver was worth, say, $500,000 and the bank had a lien for four, and I don't remember the numbers at all, but say if the bank's oversecured and they're holding on to all of the collateral to secure a payment on their loan, they still have a lien over all of it. We can't get any of it. Oh, is that right? So if you have a creditor, you have a lien on it for $400,000 and the loan is for $100,000, they have a lien on the entire amount of the worth of the silver? They were holding it in their vault. They had a possessory lien over it. Could it be adjudicated? Could there be a lien priority contest on it? Could another creditor come in and say, well, I have $100,000 on it and you have $400,000. Could that be adjudicated at some point? Sure, it could be. But from the Rigos Group's standpoint, all of their silver was encumbered. They couldn't say, here, give me $100,000 worth of my silver because I have a little bit of credit left here and I want to take some of it out. The bank was holding all of it pursuant to their lien. So who were they transferring? What were they transferring? Well, they transferred the name ownership of who actually held the rights to the ownership of the silver subject to the bank's loan. Didn't they physically transfer it? No. No, it never left. It was at HSBC before the transfer. It stayed right at HSBC the day of the transfer and the day after and for some time after that. They couldn't move it. So it was sitting in HSBC's vault. Until when? If the transfer took place in January of 2009, the loan was paid off in the end of 2009 or the beginning of 2010. So then once they paid the loan off, then the silver was owned free and clear at that point. But that's a different transfer. Shouldn't the silver then have gone to the next creditor in line? I'm not understanding your question. Well, if HSBC, if they had promised the silver as a lien on some property to HSBC but then promised the silver as a lien to the plaintiffs here, after the first lien was paid off, shouldn't then the second creditor, even arguing that they were second in line, shouldn't the silver have gone to them?  Oh, they never did. No, no, it was never posted as collateral for this loan. This was a real estate loan. This was a real estate loan. Wasn't the real estate loan with HSBC as well? Different project. Well, I know, but didn't that reflect that there was a lien on properties on HSBC too? Yes, but that was a different project. Oh, I understand that. The debt that arose here was our client borrowed money from the plaintiff to refinance a real estate loan, gave them a mortgage interest in the real estate, first priority interest. They went into court in, I believe, 2011 is the year of that foreclosure case. They foreclosed on the real estate. They disposed of the real estate. The real estate loan was about $1.4 million. They got, give or take, $1 million, I believe, in the foreclosure and had about $400,000 left. So at the time that our clients got into the relationship with the plaintiff, at the time that they disposed of the silver, this was a fully secured real estate loan that they had. But the plaintiff bank could certainly rely on the financial statements that show this is a very fungible asset of your client should they default on the loan, correct? The financials, the 07, I'm sorry, yes, 07 and 08 financials from Rego Group shows the finance, it shows over a million dollars in silver is an asset, correct? It doesn't show it's encumbered, correct? It's not clear from the financial statements that's true. Well, that's not clear. It shows the asset. It's listed under the assets, isn't it? It's listed under the assets. Right. And it's not, there's no notation that it's encumbered, no? There's no notation on the financial statement that it's encumbered, no. Right. So I mean, so if I'm the bank and I look at that and I say, well, if they happen to go default on this loan, at least I see there's a million dollars in silver sitting there as a potential asset, correct? Sure. They also would have seen that we had $700,000 of cash in the bank. They also would have seen that we had other real estate holdings. I mean, at that point in time that we gave, at that moment in time that we gave that financial statement, those were the various assets that we had, and there were loans that were out and outstanding. Your argument is that if HSBC had a possessory loan, a possessory lien, I should say, on this silver as it sat in their vault, that if the Rego Group owed $10 to HSBC and this silver is worth over a million dollars, that then that is still not an asset to the extent it's encumbered under the Act? I think close. I think where our position is is that it's not an asset to the extent that it's encumbered. The actual encumbrance is only the value of the outstanding indebtedness. I agree on that. So if there's only a $10 loan, then we only have a $10 claim. However, this was their motion for summary judgment. We provided some evidence that there was an existing encumbrance at the time of the transfer. Did you say the amount of the encumbrance? Not at this stage in the proceedings, Your Honor. It was a fairly new case. At the time that it was filed, we were looking to provide evidence of the lien more so than evidence of the specific amount of the indebtedness. We didn't see it as our burden to prove up as a matter of law the extent of the encumbrance. Who better than you, better than your client, knows the amount of the encumbrance? In hindsight, perhaps we should have included that information in the affidavit. More is always better. We didn't not include it in order to be sneaky. We didn't include it, I believe, because we didn't have the exact information as we were preparing this in 2014 about the size of a loan as it existed in 2009. Could that information have been provided? Can it be provided? Sure. Will it be provided if this case goes forward? Absolutely. Because if the silver is worth $1 million and the lien is only $500,000, well, then some of the silver is encumbered without question. But right now we've provided enough evidence to show that the silver was encumbered by the possessory lien of HSBC Bank in order to avoid summary judgment at this point. Thank you. Thank you. Thank you for your arguments here today, folks. This case will be taken under consideration, a decision rendered in due course. Thank you so much for your time here today, Steve. The trial is back.